IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES E. FIZER, JR.,               )
            Plaintiff,               )
                                     )
v.                                   )        CIVIL ACTION NO. 3:14-24360
                                     )
CAROLYN. W. COLVIN,                  )
Acting Commissioner of Social Security, )
            Defendant.               )

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the

Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered August 13, 2014 (Document

No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the

pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for

disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the

parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 9 and 10.)

The Plaintiff, Charles E. Fizer, Jr., (hereinafter referred to as "Claimant"), filed an

application for DIB on June 11, 2012 (protective filing date),[1] alleging disability as of May 31, 2012,

due to bulging disc L5-S1, degenerative joint disease, high blood pressure, depression, erectile

dysfunction, chronic osteoarthritis, GERD, hearing loss, and shortness of breath.[2] (Tr. at 11, 55, 115-

_____

[1] Claimant filed a prior application for DIB on October 11, 2010, alleging disability as of June 10, 2009. (Tr. at 8, 53.) The claim was denied initially and upon reconsideration. (*Id.*) On May 20, 2011, Claimant requested a hearing before an ALJ. (*Id.*) A hearing was held on May 10, 2012. (*Id.*) By decision dated May 30, 2012, ALJ Jerry Meade determined that Claimant was not entitled to benefits. (*Id.*)

[2] Claimant alleged chronic obstructive pulmonary disease ("COPD") as an additional disabling impairment on his Disability Report - Appeal, dated September 27, 2012. (Tr. at 205.)

17, 118-19, 145, 172-74, 182, 185.) The claim was denied initially and upon reconsideration. (Tr. at 8, 80, 92, 96-98, 102-04.) On December 6, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 8, 115-16.) A hearing was held on January 24, 2014, before the Honorable Maria Hodges. (Tr. at 26-49.) By decision dated February 10, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 8-19.) The ALJ's decision became the final decision of the Commissioner on June 6, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on August 4, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e),

416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic

limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, May 31, 2012. (Tr. at 10, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, degenerative disc disease, chronic obstructive pulmonary disease, degenerative joint disease, depression, and alcohol abuse," which were severe impairments. (Tr. at 10, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 12, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except can occasionally crawl; never climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, or crouch; avoid concentrated exposure to extreme cold and excessive vibrations; must avoid

> even moderate exposure to pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas; can occasionally operate foot controls, push, and pull with the right lower extremity; must avoid concentrated exposure to humidity and hazards, such as moving machinery and unprotected heights; retains the ability to understand, remember, and carry out simple instructions; can respond appropriately to coworkers, supervisors, and usual work situations; and can deal with changes in a routine work setting.

(Tr. at 13, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 17, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an inspector, a hand packer, and a machine operator, at the unskilled, medium level of exertion. (Tr. at 18-19, Finding No. 10.) On this basis, benefits were denied. (Tr. at 19, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on September 7, 1953, and was 60 years old at the time of the administrative hearing on January 24, 2014. (Tr. at 18, 172.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 18, 184, 186.) In the past, he worked as a municipal maintenance worker. (Tr. at 18, 186, 215-22.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in his duty to develop the medical evidence regarding Claimant's lumbar pain, cervical pain, hypertension, ear pain/hearing loss, depression, obesity, and erectile dysfunction. (Document No. 9 at 9-11.) He asserts that the ALJ failed to develop the evidence as it related to Claimant's extensive complaints, pain, discomfort, and limitations. (Id. at 9.) Claimant relies on Dr. Guberman's and Dr. Wild's opinions to support his claims of disability, which he alleges that the ALJ ignored. (Id. at 10.) Thus, Claimant contends that the ALJ committed reversible error. (Id.)

In response, the Commissioner asserts that Claimant inappropriately relies, in part, on the findings of Dr. Guberman, which related to a previously-adjudicated application. (Document No. 12 at 7.) The Commissioner further asserts that Claimant fails to recognize that the burden of establishing disability remained with him. (Id.) The Commissioner asserts that Claimant was represented by counsel at the administrative level, and therefore, retained the burden of proof. (Id. at 7-8.) Furthermore, the Commissioner asserts that Claimant must establish actual prejudice before

7

a case may be remanded to the Commissioner because of a failure to develop the record. (Id. at 8.) The Commissioner asserts that Claimant fails to demonstrate what the more fully developed record may have shown. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider and evaluate properly the combination of his impairments. (Document No. 9 at 11-12.) Claimant asserts that even a cursory review of the record demonstrates that Claimant's physical and mental impairments, when combined, totally disabled him. (Id. at 11.)

In response, the Commissioner asserts that the ALJ comprehensively discussed Claimant's impairments in combination. (Document NO. 12 at 9-10.) The Commissioner notes that two state agency physicians opined that Claimant was capable of performing a limited range of medium work, and that two state agency psychologists opined that Claimant had no limitations resulting from his psychological impairments. (Id. at 9.) The Commissioner asserts that the ALJ accounted for the work-related complaints that were supported by the record. (Id. at 10.)

Analysis.

1. Duty to Develop the Record.

Claimant alleges that the ALJ erred when she failed to develop the record regarding his severe impairments as they relate to his complaints of injuries, pain, discomfort, and limitations. (Document No. 9 at 9-10.)  Although an ALJ does have a responsibility to help develop the evidence, it is Claimant's responsibility to prove to the Commissioner that he is disabled.  20 C.F.R. § 404.1512(a), (d); 416.912(a), (d) (2014).[4]  Thus, Claimant is responsible for providing medical

---

[4] In *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate

evidence to the Commissioner showing that he has an impairment.  Id. § 404.1512(c). Although the ALJ has a duty to develop the record fully and fairly, he is not required to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that Claimant has been represented by counsel in this case throughout the proceedings. Additionally, Claimant had several opportunities to submit additional evidence at the initial and reconsideration stages of his application, and when requesting a hearing before the ALJ.

Claimant fails to indicate what he suspects additional evidence would demonstrate. Rather,

---

development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id.  The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

It is nevertheless Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2014) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment.  Id. §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." §§ 404.1512 (c); 416.912(c)(2014). In Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

he relies in part, on an opinion that pre-dates the relevant period, and asserts that the ALJ ignored the findings and opinions of his treating physicians, Drs. Wild and Beard. Contrary to Claimant's allegation, the ALJ however, summarized Claimant's treatment with Dr. Beard, including his examination findings. (Tr. at 15-17.) Although Dr. Beard did not provide a RFC assessment, the ALJ accorded great weight to Dr. Beard's examination. (Tr. at 18.)  Similarly, the ALJ summarized Dr. Wild's opinion and gave it little weight because the record as a whole did not support his extreme limitations. (Tr. at 18.) Thus, without more, the undersigned finds Claimant's arguments regarding the findings and opinions of Drs. Beard and Wild unpersuasive.

In the absence of Claimant's identification of further evidence regarding his physical impairments, the Court finds that the ALJ did not breach his "duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000). The evidence of record regarding Claimant's conditions was sufficient from which the ALJ could determine that Claimant's physical impairments were not as severe as he alleged. As such, the ALJ did not err in failing to develop further the evidence regarding Claimant's physical impairments.

2. Combination of Impairments.

Claimant also alleges that the ALJ erred in failing to assess Claimant's impairments in combination. (Document No. 9 at 11-12.) The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523; 416.923 (2014). When there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together,

they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of his impairments in combination and "fractionalized" the impairments. The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 8, 9-10, 12, .) The ALJ then discussed Claimant's impairments, finding that his obesity, degenerative disc disease, COPD, degenerative joint disease, depression, and alcohol abuse, were severe impairments. (Tr. at 10.) The ALJ specifically found, however, that the record did not reflect that Claimant had "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. at 12.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting him to medium work, with postural limitations to include no climbing of ladders, ropes, and scaffolds, and frequently climbing ramps and stairs, balancing, stooping, kneeling, and crouching. (Tr. at 13.) The ALJ also assessed environmental limitations, limitations in pushing/pulling with all extremities, and limitations accommodating his mental impairments. (Id.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 9.) In his decision, the ALJ discussed each of Claimant's impairments individually, but concluded that their combined effects were not disabling. The ALJ

11

concluded at step five, based on Claimant's failure to meet his burden and on VE testimony, that Claimant was capable of performing jobs that existed in significant numbers in the regional and national economy. (Tr. at 18-19.)

Upon review of the evidence of record and the ALJ's decision, the undersigned finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. The undersigned further finds that Claimant's arguments therefore, are without merit.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 9.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 31, 2015.

R. Clarke VanDervort
United States Magistrate Judge